IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| AVIS ROBINSON, o/b/o E.R., a Minor | PLAINTIFF |
| VS. | CIVIL ACTION NO.  3:21-cv-153-DPJ-FKB |
| KILOLO KIJAKAZI, Commissioner of the Social Security Administration | DEFENDANT |

## REPORT AND RECOMMENDATION

### I.  Introduction

E.R. was born on August 16, 2012.  In 2019, Avis Robinson, his adoptive mother, filed a claim for supplemental security income on his behalf, alleging disability due to Attention Deficit Hyperactivity Disorder (ADHD) and speech issues.  The claim was denied initially and upon reconsideration.  A hearing before an administrative law judge (ALJ) was held August 12, 2020, and on September 1, 2020, the ALJ issued a decision finding that E.R. is not disabled.  The Appeals Council denied review.  Plaintiff, proceeding *pro se*, now brings this appeal pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), arguing that the ALJ's decision is not supported by substantial evidence.

### II.  Child Disability Standard

In determining whether a child is disabled, the ALJ works through a three-step sequential process.  *See* 20 C.F.R. § 416.924.  First, the ALJ determines whether the child is working.  20 C.F.R. § 416.924(b).  If the child is not working, the ALJ goes on to

determine whether the child has a medically-determinable severe impairment or combination of impairments.  20 C.F.R. § 416.924(c).  If the ALJ finds a severe impairment or combination of impairments, the analysis proceeds to step three, at which the ALJ must determine whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of an impairment listed in Appendix 1 of C.F.R. Part 404, Subpart P, App. 1.  20 C.F.R. § 416.924(d).  A determination of disability requires a step-three finding of listing-level severity.

If the initial portion of the step-three analysis results in a finding that the impairment or combination of impairments neither meets the listings nor is medically equal in severity to a listed impairment, the ALJ undertakes a functional equivalence analysis.  This analysis consists of an assessment of the child's functioning with respect to six domains:  (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b).  The ALJ will make a finding of functional equivalence only if the child has marked limitations in two domains or an extreme limitation in one domain.  20 C.F.R. § 416.926a(d).

### III.  The Evidence of Record.

The medical evidence before the ALJ consisted of medical and school records.  These establish that E.R. was exposed to illicit substances in utero.  At four days of age he was placed with a cousin, Plaintiff herein, who adopted him.  In August of 2017, at the age of five and shortly after he had begun kindergarten, E.R. underwent an initial

assessment at Hinds County Behavioral Health Services (HCBHS).  R. 319.  His mother reported that he was argumentative, had difficulty focusing on tasks, was aggressive with other children, could not sit still, would not wait his turn, and had speech issues.  *Id.*  During the evaluation, E.R. was talkative, interrupted the examiner, and was in constant movement.  R. 323.  Initial diagnosis was ADHD.  R. 324.  In September of 2017, E.R. underwent a psychiatric evaluation at HCBHS by John Farr, NP.  R. 303.   Plaintiff reported to Farr that her son was argumentative and forgetful and that he had problems focusing.  *Id.*  She stated that she received frequent phone calls from his teachers concerning his behavior, that he climbed on things and could not sit still, and that he was restless at night.  *Id.*  She stated that he enjoyed video games, going outside, and sports like basketball and football.  R. 304.  Mental status exam revealed that E.R. was hyperactive and restless, that his speech was soft and slow, and that insight and judgment were poor.  *Id.*  Diagnosis was ADHD and exposure to illicit substances in utero. *Id.*  Farr prescribed Adderall, 5 mg per day.  *Id.*

  Thereafter E.R. was seen on a regular basis by nurse practitioners at HCBHS.  When Plaintiff reported in October of 2017 that his medication worked well but wore off by the afternoon, the Adderall was increased to twice a day.  R. 302.  In December of 2017, Plaintiff reported that this regimen was working well and that calls from school had decreased from four or five per day to only four or five within the past three months.  R. 279.  He was able to stay on task and focus.  *Id.*  On mental status exam, he was calm and cooperative.  *Id.*

3

A consultative psychological evaluation was performed by Criss Lott, Ph.D., in January of 2018. R. 273. E.R. presented as neatly groomed, well-nourished, polite, and cooperative. R. 274. He was markedly restless throughout the exam and required frequent redirection. *Id.* He was very easily distracted and often made intrusive comments. Dr. Lott noted mild articulation deficits. *Id.* On the WPPSI-IV, E.R. achieved a full-scale IQ of 86, in the low average range. R. 275. Dr. Lott's provisional diagnosis was ADHD, combined presentation. *Id.* His opinion was that E.R. appeared capable of performing at grade level but would probably have difficulty doing so consistently because of problems with impulsivity. R. 276. He also stated that E.R. would also likely continue behaving inappropriately. *Id.*

A teacher questionnaire was completed by E.R.'s kindergarten teacher, Virginia Parks, in March of 2018. R. 183. She indicated that when not on medication, E.R. had serious to very serious problems in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for oneself. R. 184-89. She stated that E.R. can function at grade level when on medication but that without medication, he is "beyond disruptive" and cannot function. R. 189.

At a visit to HCBHS in March of 2018, Plaintiff reported that E.R. was not doing as well. R. 278. His Adderall was increased to 10 mg twice a day, and he was given a prescription for .5 mg of Risperdal per day to be started if necessary. *Id.* By May of 2018, he was doing well, except for some problems with impulsivity and anger issues. R. 284. Plaintiff was instructed to hold the Adderall during the summer unless it was

necessary for summer camp and to increase the Risperdal.  *Id.*  In July 2018, Plaintiff reported an improvement in E.R.'s focus and attention.  R. 283.

E.R. entered first grade in September of 2018.  Plaintiff reported at a visit in September of 2018 that she had not been giving E.R. the recommended dosage of Risperdal because of hesitancy regarding possible side effects.  R. 282.  She agreed to increase the Risperdal because of continuing symptoms.  *Id.*  Plaintiff reported in March of 2019 that E.R. was doing "real good" on his current medications.  R. 287.  However, in June of 2019, Plaintiff informed the nurse practitioner that  that E.R.'s medications were wearing off before the end of the day.  R. 294.  Mental status exam revealed E.R. to be very hyperactive with excessive talking, and he required redirection several times.  *Id.*  The nurse practitioner increased his Adderall.  *Id.*  By September of 2019, he was doing much better in school, with no behavioral problems reported.  R. 312.  Plaintiff stated that E.R. had made the honor roll for first grade.  *Id.*  In February of 2020, Plaintiff reported  that E.R. was again having some behavior problems at school and was not focusing on tasks.  R. 325.  On mental status exam he was a little restless and hyperactive.  *Id.*  He was prescribed Tenex for impulsivity.  *Id.*

An Individualized Education Plan (IEP) was prepared in May of 2020, at the end of E.R.'s first grade year at school.  R. 262.  The plan indicates that E.R. was receiving language/speech services for an articulation problem and was progressing well.  R. 263.  His classroom teacher stated that his behavior had been good at the beginning of the year but had worsened after a period of being off his medication; after medication was restarted, he continued to have some problems.  *Id.*  On standardized testing in January

5

of 2020, E.R. had achieved a math equivalency score of 1.8 and a reading equivalency score of 0.7.  *Id.*

Plaintiff testified at the hearing before the ALJ.  She stated that E.R. had just completed the first grade and that he did "awful" in school.  R. 36.  He had three in-school suspensions during the year and was sent home twice.  R. 37.  She stated that his articulation disorder had not improved with speech therapy.  R. 38.  Plaintiff testified that E.R.'s medication does not control his ADHD.  R. 39.  She also stated that he has a short attention span, is easily distracted, and does not complete tasks.  R. 41.

## IV.  The Decision of the ALJ

The ALJ found at step one that E.R. was not working.  R. 16.  At step two, the ALJ found that E.R. has the severe impairments of ADHD and speech issues.  *Id.*  At the third step, the ALJ first found that E.R. does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  R. 18-19.  In making this finding, he considered Listing 112.11, neurodevelopmental disorders.[1]

---

[1] Listing 112.11, Neurodevelopmental disorders for children age 3 to 18 consists of two parts, A and B.  Both must be satisfied.  The A and B criteria are as follows:

   A.  Medical documentation of the requirements of paragraph 1, 2, or 3:

   1.  *One* or both of the following:

      a.  Frequent distractibility, difficulty sustaining attention, and difficulty organizing tasks; or

      b.  Hyperactive and impulsive behavior (for example, difficulty remaining seated, talking excessively, difficulty waiting, appearing restless, or behaving as if being "driven by a motor").

   2.  Significant difficulty learning and using academic skills; or

   3.  Recurrent motor movement or vocalization.

He then performed a functional equivalence assessment. R. 19. The only limitation found by the ALJ in any domain was a less than marked limitation in the domain of interacting and relating with others. R. 20, 21. After summarizing the testimony of Plaintiff, the ALJ found that although E.R.'s impairments could reasonably be expected to cause some of the alleged symptoms, the allegations as to their severity were not entirely consistent with the other evidence. R. 20-21. Because he found only a less than marked limitation in one domain, the ALJ concluded that E.R.'s impairments are not functionally equivalent to a listed impairment. R. 23. He therefore found that E.R. is not disabled. R. 24.

## V. Analysis

This Court's review is limited to determining whether substantial evidence supports the ALJ's decision and whether the correct legal standard was applied. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).[2] The Court has the responsibility to

---

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 112.00F):

1. Understand, remember, or apply information (see 112.00E1).

2. Interact with others (see 112.00E2).

3. Concentrate, persist, or maintain pace (see 112.00E3).

4. Adapt or manage oneself (see 112.00E4).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.11.

[2] Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).      .

scrutinize the entire record in making this determination. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). If substantial evidence supports the decision of the ALJ, the decision must be affirmed, even if the Court finds that the evidence leans against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

In her brief, Plaintiff challenges the ALJ's findings regarding E.R.'s abilities in five of the functional equivalency domains. These areas of function are considered below.

*Acquiring and Using information (Domain One)*. Plaintiff argues that the teacher questionnaire indicated that E.R. has very serious problems in the domain of acquiring and using information. However, the ALJ considered the questionnaire and rightly observed that the teacher stated that her conclusions were based upon E.R.'s functioning when he was not taking his medication. The teacher specifically stated that when on medication, he could function at grade level. R. 186. Plaintiff also argues that testing showed that E.R.'s reading ability was at kindergarten level when he was in the second grade. In support of this contention, she has attached to her memorandum a report that is not a part of the administrative record. [17-2] at 1. As related in the IEP, testing indicated that in January of his first-grade year, his reading equivalency level was 0.7, that is, the seventh month of kindergarten. R. 263. Thus, while he may have been below average in his reading level, his score was not so low as to demand a finding of limitations in this area. Furthermore, his math equivalency level was 1.8, that is, slightly above average. Plaintiff's arguments as to this domain are without merit.

*Interacting and Relating With Others (Domain Three).* The ALJ found that because of his speech impediment and behavioral problems, E.R. has a less than

8

marked limitation in the domain of interacting and relating with others. Plaintiff argues that E.R.'s problem in this area is more severe than found by the ALJ. In support, she points to her own testimony that his speech problem is so severe that people do not understand him when he talks. However, there is nothing elsewhere in the record to indicate anything more than a mild impediment. Dr. Lott described him as having only "mild articulation deficits." R. 274. Ms. Parks' responses to the teacher questionnaire made no mention of speech issues. While his initial evaluation at HCBHS indicated that his speech was not clear, more recent notes have specifically described his speech as clear. R. 313, 312, 325, 334. His IEP evaluation indicated that he was progressing well in speech therapy. Furthermore, as to his behavior, the medical evidence indicates that he generally has done well when compliant with medication. Substantial evidence supports the ALJ's determinations as to this domain.

*Caring for Oneself (Domain Five).* The ALJ found no limitations in E.R.'s ability to care for himself. Plaintiff challenges this by stating that E.R. is unable to take his own medication. An ALJ's analysis of abilities in each of the domains is made by comparing the claimant's performance with that of children of the same age who have no impairment. 20 C.F.R. 416.926a(b). That E.R., a young child, cannot manage his own medication is not an indication of a limitation in this area. Furthermore, the record does not support a finding of limitations in this area.

*Health and Physical Well-being (Domain Six).* Plaintiff argues that the ALJ's finding that E.R. has no limitation in the area of health and physical well-being is not supported by substantial evidence. She contends that the agency examiners found that

9

he had very serious problems regarding personal safety. However, the agency examiners at both the initial determination and upon reconsideration found no limitations in this area. R. 49, 59. Furthermore, the undersigned has found nothing in the record to support a limitation for health and physical well-being.

*Attending and Completing Tasks (Domain Two).* The ALJ found that E.R. has no limitations in the area of attending and completing tasks. The ALJ acknowledged references in the notes to restlessness, particularly in the past. However, he observed that more recent exam notes indicated that medication had been effective in addressing this issue. Plaintiff challenges this finding.

While it is true that medication has been effective, the record does not indicate that medication has completely eliminated all problems with attending and completing tasks. HBHS notes from late 2019 and early 2020 indicate that the school was reporting continuing problems with hyperactivity and focus, and that he required redirection to stay on task. Mental status exams throughout the treatment period indicate problems with restlessness and hyperactivity. For these reasons, the undersigned finds that the ALJ's determination that E.R. has no limitations in the area of attending and completing tasks is not supported by substantial evidence.

Nevertheless, reversal is not warranted. This court has previously determined that where an ALJ's finding as to one domain is not supported by substantial evidence, a finding of non-disability may be affirmed if the plaintiff cannot show prejudice as a result of the ALJ's mistaken finding. *Beasley v. Astrue*, 2012 WL 4369742 (S.D. Miss. 2012). In the present case, given the ALJ's findings as to the other domains, only a

finding of an extreme limitation in this area could have resulted in a finding of disability. The evidence of E.R.'s general success with his schoolwork when following his medication regimen does not support a finding of an extreme limitation in the area of attending and completing tasks. Thus, the ALJ's failure to find any limitation in this area constitutes harmless error.

In summary, there is no basis for disturbing the ALJ's functional equivalency determination. The ALJ gave a well-reasoned basis for concluding that E.R. has no limitations in the domains of acquiring and using information, moving about and manipulating objects, caring for oneself, and health and physical well-being, and these findings are supported by substantial evidence. The ALJ likewise explained his finding that E.R's limitations in the domain of interacting and relating with others are less than marked, and this finding is also supported by substantial evidence. While the ALJ erred in his finding that E.R. has no limitations in the area of attending and completing tasks, the error was harmless in light of the findings as to the other domains.

Finally, the undersigned has carefully reviewed the entire record and concludes that all of the remaining findings made by the ALJ, including his determination that E.R.'s impairments do not meet the listings and are not medically equivalent to a listed impairment, are supported by the evidence of record. The undersigned also finds no reversible legal errors.

## VI.  Conclusion

For these reasons, the undersigned recommends that the decision of the Commissioner be affirmed.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy[3] shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 12th day of July, 2022.

/s/ F. Keith Ball
United States Magistrate Judge

---

[3] Where a document is served by mail, the party is considered to have been served on the date the document is mailed by the Court. *See* Fed. R. Civ. P. 5(b)(2)(C).